Rufus Haney, appellee, v. Charles J. Collins, appellant.

Filed October 18, 1919. No. 20302.

1. **Parol Evidence: Local Custom.** Where local custom or usage has given to a term a special meaning of general acceptance in a certain line of business, parol evidence is admissible, in the case of a written contract, to show such meaning. Such evidence does not vary the terms of the written instrument, but merely aids. in ascertaining the intention of the parties by showing the true significance of the terms employed.

2. **Public Lands: Homestead: Existing Improvements.** As against all parties except the United States, an entryman on public lands under the homestead laws is entitled to all existing permanent improvements on the land on which he files, and where a trespasser, or a former entryman, has erected permanent improvements on public lands, which are not removed at the time of an entry thereon under the homestead laws, an agreement on the part of the entryman, who has successfully contested the original entry, to pay for such improvements is unenforceable for want of consideration.

Appeal from the district court for Grant county: Bayard H. Paine, Judge. *Affirmed on condition.*

*Daniel F. Osgood,* for appellant.

*Mitchell & Gantz, contra.*

MORRISSEY, C. J.

Plaintiff's first cause of action is based on two promissory notes, on which the parties agreed at the trial that there was due $615, together with a small item of interest. In the second cause of action plaintiff seeks to recover $100, and interest, for a wire fence which had been owned by plaintiff prior to the time when defendant made a homestead entry on the land on which the fence stood. Defendant set up numerous counterclaims, and, on trial to a jury, there was a verdict and judgment for plaintiff for $315.70. Defendant appeals.

Two questions are presented for review. Defendant had pastured cattle for plaintiff under a written contract, which provided that plaintiff should pay the sum of 25 cents per head, per month, for any cattle defendant should pasture for him. The contract contained other provisions requiring defendant to furnish certain lands and fences, but, as there is no dispute on these items, it is not necessary to set them out.

Most of the cattle pastured by defendant were cows, many of them with sucking calves. The contract contains no mention of the calves, unless they are included in the term "head." Defendant claimed he was entitled to pay for the pasturage of the calves, whether they were running with the cows when the cattle were first delivered, or were afterwards born while the cows were in his pasture. Plaintiff denied liability for the pasturage of the calves and, over the objection of defendant, was permitted to prove the custom among live stock men in that vicinity of counting an unweaned calf with its mother, and of making no charge therefor. The ruling of the court in permitting proof of this custom is assigned as error, on the ground that it allowed the terms of a written instrument to be varied by parol.

The term "head of cattle" as used in this contract has, of course, a clear and well-defined meaning when used in a general sense. But this does not prevent it from having a special meaning of general acceptance in pasturage contracts, among stockmen in the locality where these parties did business. And where local custom or usage has given to a term a special meaning of general acceptance in a certain line of business, parol evidence is admissible, in the case of a written contract, to show such meaning. 3 Jones, Commentaries on Evidence, secs. 455-457. Such evidence does not vary the terms of the written instrument, but merely aids in ascertaining the intention of the parties by showing the true signification of the terms employed. The evidence complained of merely showed that a cow and her unweaned calf constituted but a single "head of cattle" under the special meaning accorded the term generally in pasturage contracts among stockmen, in the locality where the parties did business. There was no error in its admission.

The second question presented arises out of plaintiff's attempt to recover for a fence which, confessedly, stood upon public lands of the United States at the time defendant entered the same under the homestead laws. The fence was erected some time prior to 1907 by one Kackley, who subsequently undertook to sell it to plaintiff. One Mondell entered the land under the homestead act. The record does not show what, if any, agreement there was in relation to the fence between the entryman and Kackley, or plaintiff. Mondell's entry was successfully contested by defendant, who made a homestead entry thereon in 1907. The fence remained upon the land, apparently without question as to ownership, until this suit was filed. Plaintiff testified that in 1913 he and defendant entered into an oral agreement by which he sold the fence to defendant for $100. Defendant denied this agreement. As we view it, the conflict in the evidence on this point is immaterial.

The rule is well established that, as against all parties except the United States, an entryman on public lands under the homestead laws is entitled to all existing permanent improvements on the land on which he files. *Hiatt v. Brooks*, 17 Neb. 33; *Hill v. Pitt*, 2 Neb. (Unof.) 151. And where a trespasser, or a former entryman, has erected permanent improvements on public lands, which are not removed at the time of an entry thereon under the homestead laws, an agreement on the part of the subsequent entryman, who has successfully contested the original entry, to pay for such improvements is unenforceable for want of consideration. Defendant was already entitled to the fence, free from the claims of all persons except the government of the United States. This cause of action ought not, therefore, to have been submitted to the jury.

While it is difficult, in view of the numerous items of defendant's counterclaim, to ascertain with certainty just what the jury took into consideration in arriving at its verdict, it is clear that the judgment in part, at least, rests upon plaintiff's second cause of action. Exclusive of the claim for the fence, and certain credits plaintiff admitted to be due on the counterclaim, plaintiff's demand amounted to $280.62, while the verdict and judgment are for $315.70. If plaintiff chooses to file a remittitur within 30 days for $120.13, the amount including interest claimed for the fence, the judgment of the district court will be affirmed, otherwise it will be reversed and a new trial granted.

AFFIRMED ON CONDITION.

CORNISH and SEDGWICK, JJ., concurring.

The statement of the law contained in paragraph 1 of the syllabus is faulty, if not erroneous, and contrary to the rule as announced in *Bixby v. Bruce*, 69 Neb. 78. One prerequisite for the introduction of oral evidence always is that without it the contract would be ambiguous. Another is that where the contract is not ambigu-

ous on its face, but special meaning is sought to be given the words used, which is limited to dealings with an individual or to a locality, then it must first be shown that the parties to be bound knew of it. Neither of these prerequisites is embodied in the syllabus.

1. When in a written contract a character, mark, letter, figure, word or phrase (the instances are multitudinous) is used, having a peculiar technical or local meaning, unintelligible to persons unacquainted with the business, then parol evidence is admissible to explain the ambiguity without the foundation that the party knew it. Here the ambiguity appears from the context of the instrument. The parties have contracted with reference to a particular trade or business, and have deliberately used the word, and parol evidence is admissible to show its actual meaning.

2. When the ambiguity arises out of circumstances surrounding the contract, such as a local usage, and not out of a term of doubtful meaning shown in the context, an additional inquiry arises. The local usage can be incorporated into the contract only on the assumption that the parties contracted with reference to it. The general rule is that contracting parties may rely upon it that their words used will be given their natural and primary meaning. There is no presumption of law in such a case that a usage, even though uniform and general, if confined to a particular locality, is known to either of the parties. Not one, but *both,* of the parties must have contracted with reference to it. The party offering oral evidence must show as a foundation for it that the other party had actual knowledge of the local usage, or he must show that the usage was of such general, uniform and notorious a character that from the evidence the jury may find that he knew of it. Otherwise, in some cases great injustice would be done. It is not sufficient to show that the usage is "generally accepted" in the locality, as stated in the syllabus. A practice does not rise to the dignity of a usage in any

case until it is generally accepted. Even if generally accepted, it cannot be used to contradict the contract. The ambiguity must exist, and the usage be consistent with the words used. As Lord Lyndhurst expressed it: "Usage may be admissible to explain what is doubtful; it is never admissible to contradict what is plain."

Neither of these two requisite foundations for the testimony is stated in the syllabus. In fact, the syllabus appears to have confused the two rules stated above, namely: Where the ambiguity appears upon the face of the instrument, the instrument itself not showing the meaning intended by the parties, then the court, in permitting oral testimony to explain the ambiguity without evidence of knowledge, is merely endeavoring to interpret the instrument as written. Where the ambiguity arises out of surrounding circumstance, showing merely an individual or local custom, then it must be shown that the parties knowingly contracted with reference to it. As to certain inconveniences of proof, see 17 C. J. 519, sec. 86.

Whether a written contract, whereby C. agrees to pasture *cattle* at so much a head, will necessarily include calves a few weeks or days old, running with their mothers in the pastures, or is ambiguous as to the intention of the parties, is possibly not entirely clear under the authorities. We do not consider it our duty to dissent from the opinion of the majority upon that question.